(91 South. 503)

No. 24531.

DOUGLAS, BURT & BUCHANAN CO. v. TEXAS & P. RY. CO.

(March 20, 1922. Rehearing Denied May 1, 1922.)

*(Syllabus by Editorial Staff.)*

1. Navigable waters ⬤⟹20(4)—Diligence held exercised in removing bridge to permit dredge to pass.

A railway *held* to have exercised due diligence in taking down a bridge over a bayou as quickly as possible to permit a dredge to pass after being advised of the date when the dredge would arrive.

**2. Navigable waters ⊛═20(4)—Delay in removing bridge to permit dredge to pass held not proximate cause of loss.**

Where a dredge, delayed in passing down a bayou by delay in removing a railroad bridge, was further delayed at a lower drawbridge because high water made it impossible to pass through the draw, and it could not have passed any quicker if not delayed at the first bridge, the delay at the first bridge was not the proximate cause of the dredge owner's loss from the delay consisting of the earnings of the capital invested and the services of the crew.

**3. Waters and water courses ⊛═55—Must let dredge employed in public work pass bridge maintained across bayou.**

It was incumbent upon a railway company maintaining a bridge across a bayou to let a dredge, employed in public drainage and levee work, pass up and down whenever necessary in the performance of its work, though the bayou be considered in law nonnavigable.

**4. Damages ⊛═87(1)—Punitive damages not recoverable in civil action.**

Punitive damages are not recoverable in a civil action in Louisiana.

Appeal from Fourteenth Judicial District Court, Parish of Avoyelles; S. Allen Bordelon, Judge.

Action by the Douglas, Burt & Buchanan Company against the Texas & Pacific Railway Company. From a judgment for plaintiff, defendant appeals. Judgment annulled, and suit dismissed.

Spencer, Fenner, Gidiere & Phelps, of New Orleans, and Peterman, Dear & Peterman, of Alexandria, for appellant.

L. Percy Garrot, of Shreveport, for appellee.

By Division B, composed of Justices O'NIELL, LAND, and BAKER.

O'NIELL, J. The receivers of the Texas & Pacific Railway Company have appealed from a judgment against them for damages in the sum of $2,737.96. The cause of action was that a dredge boat belonging to plaintiff was detained 27 days by the obstruction of navigation, by a bridge of the railway company, on Bayou des Glaises, near Longbridge station. It is alleged that Bayou des Glaises is a navigable stream, the obstruction of which was unlawful, and that the railway company, instead of removing the bridge promptly when requested by plaintiff, "did, willfully, knowingly, wrongfully and deliberately detain and hold up the boat of petitioner, from the 3d day of May, 1920, at noon, to the 30th day of May, 1920, at noon—a period of 27 days—on which day only did the defendants break their bridge and allow petitioner's boat freely to pass and continue its journey."

[1, 2] There are several pleas urged in defense of the suit. Although Bayou des Glaises, above the bridge and for a considerable distance below it, might be regarded as a navigable stream within the definition of the federal statutes, it is not in fact navigable, and has not been navigated during the past 25 years by boats carrying passengers or freight. In April, 1917, when plaintiff desired to send the dredge up the bayou beyond the bridge, and requested the railway company to remove the bridge for that purpose, the attorney attending to the railway company's end of the transaction understood the attorney then representing plaintiff to say that the dredge would not return that way, and that therefore it would not be necessary to remove the bridge again. Being so advised, the superintendent ordered the bridge taken down for the dredge to pass, and replaced permanently on piling, making it difficult and expensive to take it down again. The railway company was not notified until the 24th of April, 1920, that the dredge was to return down Bayou des Glaises, and that therefore the bridge would have to be taken down again, notwithstanding plaintiff had signed a contract on the 15th of September, 1919, to do dredging work on Darbonne Lake, to be commenced within 90 days and completed within 18 months,

which required that the dredge should be passed through the bridge in time to commence and complete the work on Darbonne Lake. Even then the manager of the dredge, in his written request that the bridge be taken down again, did not say exactly when the dredge would be ready to move. He said that it would arrive at the bridge "about May 1st, or a little later, as we will advise." As soon as the superintendent of the railway was advised of the date when the dredge would arrive at the bridge, he began making arrangements for taking down and reconstructing the bridge. Of course it could not be taken down until arrangements had been made to replace it promptly to avoid a long interruption of passenger and freight traffic over the railroad. A reconstruction of the bridge required timbers of extraordinary dimensions for pilings and spans, some of the pilings being 65 and some 70 feet long, which the railway company did not have in stock and could not buy anywhere on its line of railway. The purchasing agent of the railway company was extremely diligent in his efforts to procure such pilings, and finally found and bought them in Beaumont, Tex., many miles from defendant's railway. They were shipped promptly via the Southern Pacific Railway, and the superintendent traced and hurried the shipment constantly until its arrival at Bayou des Glaises. The record shows that due diligence—in fact all possible diligence—on the part of the railway company was exerted to take down the bridge as quickly as possible. After passing through the bridge, the dredge spent three weeks going down Bayou des Glaises, a distance of about 40 miles, to Simsport, where the bayou empties into the Atchafalaya river. The delay was caused by engine trouble on the tug boat, and by the high stage and swift current of the bayou, compelling the boat to steer close to shore, causing her to run aground several

times. The boat proceeded on its journey down the Atchafalaya river to Melville, where the railway company maintains a drawbridge. The stage of the river was yet so high and the current so swift that it was impossible to pass the dredge through the draw. Several unsuccessful attempts were made with the aid of a large steam tug and a towboat. The manager of the dredge was therefore compelled to tie up at Melville and wait 18 days, until the river had fallen 10 feet. The dredge was then taken out into the current by the power boats and sent through the open bridge, with considerable danger, even then, to both the dredge and the bridge. The stage of the river at Melville was even higher when the dredge arrived at Longbridge than it was when the dredge arrived at Melville, about seven weeks later. And the stage of the river at Melville was never lower, at any time during those seven weeks, than it was when the dredge arrived at Melville. In other words, the dredge could not have passed through the Melville bridge safely, if at all, any sooner than it did pass, if it had not been detained at all at Longbridge. As the dredge had to pass Melville to go to its destination on Darbonne Lake, the time that was lost at Longbridge would have been added to the time that was afterwards lost at Melville if the dredge had not been detained at Longbridge. Although the loss of time at Longbridge no doubt seemed serious to plaintiff while it was going on, the subsequent developments, regarding the stage of the Atchafalaya river at that time, show that there was no financial loss on that account; because it made no difference whatever in the total loss of time that the dredge was delayed at Longbridge when, if she had not been delayed there, she would have been delayed that much longer at Melville.

The manager of the dredge testified that, if he had not been delayed at Longbridge,

he would have made connection with a tugboat at Simsport, with the aid of which he could have passed through the drawbridge at Melville. The testimony was largely, if not entirely, a matter of conjecture or surmise on the part of the witness, both as to the probability that he could have made connection with the tugboat at Simsport and as to the probability that the tugboat would have been able to pass the dredge through the bridge at Melville. The evidence shows to our satisfaction that any number of tugboats would have been unable to send the dredge through the bridge at Melville safely, if at all, any sooner than it was sent through.

As far as the record shows, plaintiff's dredging contract on Darbonne Lake was fulfilled without any loss on account of the delays to the dredge. The only elements of loss were the services of the salaried crew of the boat and the earnings of the capital invested while they were idle. But the delay at Longbridge was not the proximate cause —in fact, it was not even the remote cause— of that loss, because the loss would have resulted in any event from the fortuitous event, from the stage of the river at Melville. For that reason the railway company is not liable for the loss, and would not be liable if the officers or employees of the company had been guilty of negligence in detaining the dredge at Longbridge.

[3, 4] Whether Bayou des Glaises at and above Longbridge is a navigable stream, as defined by the federal statutes, is not important in this case. Plaintiff was engaged, and the dredge was employed, in public drainage and levee work. For that reason it was incumbent upon the railway company to let the dredge pass up and down the bayou whenever necessary in the performance of its work, even though the bayou should be considered in law nonnavigable. Petit Anse Coteau Drainage District v. Iberia & Vermillion Railroad Co., 124 La. 502, 50

South. 512. Therefore we are not called upon to decide in this case whether a stationary bridge across Bayou des Glaises was an unlawful obstruction of navigation, under either federal or state statute. This is not an action to remove the bridge, or to punish the railway company for maintaining it. Punitive damages are not recoverable in a civil action in this state. This action is for compensatory damages, for which, in our opinion, defendant should not be held responsible.

The judgment appealed from is annulled, and plaintiff's demand is rejected, and this suit is dismissed, at plaintiff's cost.

Rehearing refused by Division C, composed of Justices DAWKINS, ST. PAUL, and THOMPSON.